# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT J. STEWART, EDNA L. STEWART, as Trustee(s) of The Stewart Living Trust, DERRA, LTD., THOMAS BOWER and LYNN BOWER, : Plaintiffs, : : v. : : SWEPI, LP, : Defendant : | Civil Action No. 4:11-cv-2241 : (Judge Conner) |

## MEMORANDUM

Presently before the court in the above-captioned matter is the motion to dismiss (Doc. 8) filed by defendant SWEPI, LP ("SWEPI"). In their complaint (Doc. 1), plaintiffs Robert Stewart, Edna Stewart, Thomas Bower, Lynn Bower, and Derra, Ltd. (collectively, when appropriate, "plaintiffs"), bring four counts: Count I seeks a declaratory judgment that the oil and gas lease that is the subject of this litigation has expired; Count II seeks, in the alternative, a declaratory judgment that the lease has expired with respect to particular portions of the leasehold estate; Count III alleges slander of title under Pennsylvania law; and Count IV alleges breach of the covenant of good faith and fair dealing under Pennsylvania law. The motion to dismiss has been fully briefed and is ripe for disposition. For the reasons to be discussed, the court will grant SWEPI's motion in part, and deny it in part.

I.  **Factual and Procedural Background**

When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most

favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Gelman v. State Farm Mut. Auto. Ins. Co., 583 F.3d 187, 190 (3d Cir. 2009) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)); see also Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)). Although the court is generally limited in its review to the facts contained in the complaint, it "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994); see also *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

This case involves the oil, gas and mineral rights in a number of tracts of land in North-Central Pennsylvania. Plaintiff The Stewart Living Trust (the "Living Trust") owns seven parcels of land[1] in Middlebury and Tioga Townships, Tioga County, Pennsylvania, with a total acreage of 797.24 acres. In March 2010, the Trustees of the Living Trust executed and recorded a quit claim deed with the Tioga County Recorder of Deeds, which was later modified by a corrective deed executed and recorded in December 2010. The quit claim deed divided the oil, gas and mineral rights in the seven parcels into one third interests, transferring a one

---

[1] The parcels may be identified specifically by their tax numbers, which are as follows: 24-02-06, 113.2 acres, in Middlebury Township; 24-02-10, 110.25 acres, in Middlebury Township; 24-02-05, 7.8 acres, in Middlebury Township; 24-03-11, 152.4 acres, in Middlebury township; 24-03-17Q, 175.7 acres, in Middlebury Township; 24-03-57, 215.69 acres, in Middlebury Township, and 34-03-85, 22.2 acres, in Tioga Township. When possible, the court will refer to the parcels collectively.

third interest to David Stewart and Eloise Stewart, as husband and wife, a one third interest to Thomas Bower and Lynn Bower, as husband and wife, and retaining a one third interest for the Living Trust.  David and Eloise Stewart executed a quit claim deed at an unspecified time in 2011, which was recorded with the Tioga County Recorder of Deeds on February 14, 2011, in which they deeded their one third interest in the oil, gas and mineral rights in the property to plaintiff Derra, Ltd.

On September 22, 2005, Robert and Edna Stewart, as Trustees of the Living Trust, executed an oil and gas lease with Fortuna Energy, Inc.  According to plaintiffs, Fortuna Energy later sold, assigned, or otherwise transferred its interests in the lease to defendant SWEPI.  This litigation concerns the primary term of the lease, the provisions providing for the pooling, unitization, or combination of portions of the leasehold, and the actual operations undertaken in exploring and accessing any gas, mineral or oil in the subsurface estate.  Careful examination of these portions of the lease is essential to disposition of the pending motion, and hence those relevant passages will be reproduced here in full:

> 3. LEASE TERM
>
> This Lease shall remain in force for a primary term of Five (5) years from September 22, 2005 (the "Primary Term"), and for so long thereafter as any of the following occur:
>
> > (i) a well capable of producing oil and/or gas is located on the Leasehold, or on lands pooled, unitized or combined with all or a portion of the Leasehold;

- (ii) Lessor is receiving Royalty payments or Shut-In payments pursuant to the terms of this lease;

- (iii) Operations, as hereinafter defined, are being conducted on the Leasehold, or on lands pooled, unitized or combined with all or a portion of the Leasehold, with no cessation of greater than one hundred eighty (180) consecutive days, provided that such Operations result in a well capable of producing oil and/or gas; or

- (iv) the Leasehold is used, or intended to be used, for the underground storage of gas, or for the protection of stored gas;

provided that if, after the expiry of the Primary Term, the last producing well located on the Leasehold, or on lands pooled, unitized or combined with all or a portion of the Leasehold, is plugged and abandoned, this Lease shall remain in force for an additional period of one (1) year from the date of the plugging and abandonment of such well, and shall continue thereafter if any of the conditions in items (i) through (iv) of this provision are applicable at the end of such additional one (1) year period.

For the purposes of this Lease, "Operations" includes any of the following which may occur on the Leasehold, or on lands pooled, unitized or combined with all or a portion of the Leasehold:

- (i) drilling, which includes applying for permits, the commencement of clearing operations on or adjacent to the well site area such as the removal of trees and the construction of access roads in preparation for drilling, the delivery of heavy equipment and otherwise using bona fide good faith efforts to diligently prepare the physical well site areas as required prior to the commencement of actual drilling activities;

- (ii) testing, completing, reworking, recompleting, deepening, sidetracking, stimulating, fracing, plugging back or repairing a well or equipment;

- (iii) any acts in search for or in an endeavor to obtain, maintain or increase the production of oil and/or gas

>> including, without limitation, injecting substances into a well;

> (iv) the production of oil and/or gas;

> (v) the recovery of any injected substance; or

> (vi) any act or acts similar or incidental to any of the foregoing

. . .

> 5. SHUT-IN ROYALTY

If, at the expiry of the Primary Term or any time or times thereafter, all wells located on the Leasehold, or on lands pooled, unitized or combined with all or a portion of the Leasehold, are shut-in, suspended or otherwise not producing for any reason whatsoever (the "Shut-in Period"), this Lease shall nevertheless continue in force as though Operations were being conducted on the Leasehold for so long as all such wells are shut-in, suspended or otherwise not producing and for so long thereafter as any of the provisions of clause 3 of this Lease are applicable. If no Royalty is otherwise payable hereunder during a lease year after the expiry of the Primary Term within which any such Shut-In period occurs, Lessee shall pay Lessor an annual shut-in royalty equal in amount to the Rental (the "Shut-In Royalty") prior to, or within 90 days after, the expiry of the lease year during which all such wells were shut-in, suspended or otherwise not producing.

. . .

12. UNITIZATION

> Lessee is hereby granted the right, in its sole discretion, to pool, unitize or combine all or any portion of the Leasehold with any other land or lands, whether contiguous or not contiguous, at any time before or after the drilling of a well so as to create one (1) or more drilling or production units. Any such drilling or production unit shall not exceed such size as authorized by governmental authority having jurisdiction. For all purposes under the provisions of this Lease, the Leasehold shall be deemed to be unitized upon the commencement of Operations pertaining to any such drilling or production unit. Lessee is granted the right to change the size, shape and conditions of any unit created, however, any such change shall not affect the date upon which unitization occurred or is deemed to have occurred. . . . Any Operations conducted on the drilling or production unit, whether conducted before, after or during the exercise of the rights and powers granted under this clause, or the presence of a well capable of production located on the drilling or production unit, shall have the same effect in continuing this Lease in full force and effect as if such Operations were conducted upon the Leasehold, or as if such well capable of production was located on the Leasehold.

On September 17, 2010, five days before the primary term of the lease was to expire, SWEPI filed a "Declaration of Pooling and Unitization," unitizing several parcels, including portions of tax parcels 24-02-06 and 24-02-10 (the "-06" and "-10" parcels, respectively), which portions comprised 105.54 acres. These parcels were unitized into the "Bauer, D. #849 Unit," (the "Bauer Unit"), and the unitization purported to take effect as of September 15, 2010.[2]

---

[2] According to the pleadings, the unitization included 14.57 acres out of the 113.20 acres in tax parcel 24-02-06, and 90.96 acres out of the 110.25 acres in tax parcel 24-02-10. The court notes that these figures add up to 105.53 acres, rather than 105.54 acres, and will attribute this minor discrepancy to a rounding error. The Bauer Unit also includes 32.63 acres out of tax parcel 24-02-11.

According to the complaint, no well has been drilled, nor have any operations commenced, on any land covered by the Living Trust Lease, including the unitized -06 and -10 parcels. At some point in September 2010, an intermediate successor or assignee of the original Lessee applied for a permit to drill a vertical well on tax parcel 24-02-12A, also included within the Bauer Unit but not part of the Living Trust leasehold. However, according to the complaint, since the installation of the vertical well and for a period of at least 180 days, neither the original Lessee nor any assignee of the Lessee (here, SWEPI) has performed any operations as defined in the lease on the Bauer Unit, nor has SWEPI proceeded to develop a producing well or a well capable of production, sufficient to extend the Living Trust Lease beyond the five year primary term.

The complaint further alleges that the purported unitization of the -06 and -10 parcels into the Bauer Unit was recorded without good faith intent towards production. Plaintiffs allege that the Living Trust lands cannot be deemed a part of the Bauer Unit because the primary term of the lease has expired, and the conditions necessary to continue the lease beyond the primary term have not occurred. They also argue that, even *if* portions of the -06 and -10 tax parcels were unitized into the Bauer Unit to sustain the lease, the lease should not be extended for those discrete tax parcels and remainder portions of the -06 and -10 parcels that were not incorporated into the Bauer Unit. Plaintiffs also bring claims alleging slander of title and breach of the covenant of good faith and fair dealing.

Plaintiffs seek a declaratory judgment that the primary term of the lease expired on September 22, 2005 as to all of the leasehold lands, or in the alternative, as to any non-unitized parcels and portions of parcels; that the "Declaration of Pooling and Unitization" filed September 17, 2010 is unenforceable against plaintiffs, or in the alternative that it is unenforceable against non-unitized parcels and portions of parcels; that the Declaration is unenforceable to the extent it was filed in bad faith; and/or that the Unitization clause of the lease is unenforceable.

## II. **Standard of Review**

The above-captioned matter arises under the court's diversity jurisdiction. A federal court sitting in diversity is obliged to apply the substantive law of the forum state, which in this case is Pennsylvania. Lafferty v. St. Riel, 495 F.3d 72, 76 (3d Cir. 2007) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938)). The Declaratory Judgment Act grants district courts of competent jurisdiction the authority to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). Declaratory relief is within the sound discretion of the district court to grant, and in deciding whether to do so the court is obliged to consider "facts bearing on the usefulness of the declaratory judgment remedy, and the fitness of the case for resolution." Wilton v. Seven Falls Co., 515 U.S. 277, 289 (1995).

The standard of review under Rule 12(b)(6) is well established. The court must conduct a two-part analysis to determine the sufficiency of the complaint. First, the court must separate the factual matters averred from legal conclusions

asserted. Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). Although facts pled in the complaint must be taken as true, the court may disregard any legal conclusions. Id. at 210-11. Second, the court must determine whether the factual matters averred are sufficient to show that the plaintiff has a "plausible claim for relief." Id. at 211 (quoting Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009)). Ultimately, the analysis is "context-specific" and requires the court to "draw on its judicial experience and common sense" to determine whether facts alleged in the complaint suggest "more than the mere possibility of misconduct." Iqbal, 556 U.S. at 679.

## III. Discussion

SWEPI argues that each of plaintiffs four counts should be dismissed with prejudice, and the court will address each in turn.

### A. Count I

Under Pennsylvania law, "a lease is in the nature of a contract and is controlled by principles of contract law." T.W. Phillips Gas and Oil Co. v. Jedlicka, 42 A.3d 261, 267 (Pa. 2012). The lease "is to be construed in accordance with the terms of the agreement as manifestly expressed," J.K. Willison v. Consolidation Coal Company, 637 A.2d 979, 982 (Pa. 1994), and the language of the lease should be given its "accepted and plain meaning, rather than the silent intentions of the contracting parties." T.W. Phillips, 42 A.3d at 261. The burden of proof is borne by the party seeking to terminate the lease. Id. (citing Jefferson County Gas Co. v. United Natural Gas Co., 286 A. 340, 341 (1915)).

9

SWEPI argues that Count I of the complaint should be dismissed because the lease "expressly permits" SWEPI's unitization of portions of the leasehold. (See Doc. 9 at 11). SWEPI pooled and unitized portions of the -06 and -10 tax parcels into the Bauer Unit, upon which it then drilled a well in September 2010, prior to the end of the primary term of the lease. (Id.) Pursuant to the terms of the lease, "the presence of a well capable of production located on the drilling or production unit, shall have the same effect in continuing this Lease in full force and effect as if such Operations were conducted upon the Leasehold." (See Lease, Doc. 1-1 ¶ 12). Hence, SWEPI argues, the unitization of the -06 and -10 tax parcels with a non-leasehold parcel upon which a well was drilled has the effect of continuing the leasehold beyond the expiration of the primary term.

SWEPI characterizes plaintiffs' claim as an objection to the unitization of portions of the leasehold with other lands, a claim that it says is easily refuted by the express language of the lease. This characterization is, in effect, a straw man argument and misapprehends the actual nature of plaintiffs' claim. For the unitization of the -06 and -10 tax parcels with non-leasehold lands to extend the term of the lease beyond the primary term, there must either be a "well capable of production" on the non-leasehold lands, or else other "Operations," as defined in the lease, must be occurring on the parcel. (Id.) Plaintiffs allege that the vertical well installed on the Bauer Unit has not been developed into a well capable of production, nor have other operations been performed on the Bauer Unit, and that therefore the lease has expired on its own terms. (See Complaint, Doc. 1 at ¶ 26).

Their argument is not that the unitization was improper per se, but that the -06 and -10 tax parcels were not unitized with lands containing a well capable of production, a condition necessary to continue the lease beyond the primary term.

SWEPI addresses this argument more directly in its reply brief. SWEPI asserts that, under Pennsylvania law, the determination of whether a well is capable of production is a subjective determination to be made by the lessee, and that plaintiffs have plead no facts alleging that the well is not capable of production, nor have they plead facts alleging that SWEPI installed the well without good faith intent to pursue production. (See Doc. 13 at 8). SWEPI directs the court's attention to T.W. Phillips Gas & Oil Co. v. Jedlicka, 964 A.2d 13, 19 (Pa. Super. Ct. 2008), a case that was appealed to and decided by the Pennsylvania Supreme Court during the pendency of this motion. See T.W. Phillips Gas & Oil Co. v. Jedlicka, 42 A.3d 261 (Pa. 2012). In T.W. Phillips, the Pennsylvania Supreme Court articulated the proper test for determining whether an oil and gas lease had produced "in paying quantities." Id. at 263. The court held that when well production has been marginal or sporadic over "some period," such that the profits derived from the well failed to exceed its operating expenses, then the "determination of whether the well has produced in paying quantifies requires consideration of the operator's good faith judgment in maintaining operation of the well." Id. at 276. A court engaging in this "good faith" inquiry must consider the reasonableness of the time period that the well was operated at a loss, id., and if "the evidence establishes that the lessee was not operating the wells for profit in good faith, the lease will terminate."

Id. at 277.

Contrary to SWEPI's assertion, plaintiffs have plead sufficient facts to support their allegation of bad faith. In the complaint, plaintiffs allege that the vertical well was installed just days before the expiration of the primary term and solely for the purpose of extending the lease, that the well has not produced any oil or gas since its installation and for a period of at least 180 days, and that SWEPI has failed to engage in operations to develop the well. (Id. at ¶ 24-28). These allegations raise a plausible claim that the well on the Bauer Unit was installed for the purpose of speculation rather than a good faith intent to produce oil or gas, that the well is therefore not a "well capable of production," and that the lease has expired.

SWEPI argues in the alternative that, even crediting plaintiffs assertions regarding the status of the Bauer Unit well, the lease terms provide for the extension of the lease beyond the primary term even if all wells located on the leasehold or on lands unitized with the leasehold are not producing, so long as the lessee is paying "shut-in royalties" to the lessor. (See Lease, Doc. 1-1 at ¶¶ 3(ii), 5). Plaintiffs did not allege that they have not received shut-in payments, an omission that SWEPI believes is fatal to plaintiffs' claim. However, as plaintiffs correctly argue, SWEPI may raise claims of payment in its answer, and may produce evidence of payments to show that the lease has not expired. That issue is not, however, appropriate for resolution on a motion to dismiss.

For these reasons, SWEPI's motion to dismiss Count I will be denied.

**B.     Count II**

Count II of the complaint seeks, as an alternative to Count I, a declaratory judgment that the lease has terminated with respect to those parcels or portions of parcels not unitized into the Bauer Unit. The non-unitized land includes tax parcels 24-02-05, 24-03-11, 24-03-17Q, 24-03-57, and 34-03-85, and portions of the -06 and -10 parcels. Plaintiffs argue that the unitized parcels amount to only one-eighth of the total area of the leasehold, and that unitization of such a small portion of the leasehold should not extend the term of the lease for the non-unitized parcels. SWEPI argues that the lease unambiguously provides for the extension of the lease term for the entire leasehold upon the unitization of all *or a portion* of the leasehold. (See Doc. 9 at 13; see also Lease, Doc. 1-1 at ¶ 12 ("Any Operations conducted on the . . . unit . . . or the presence of a well capable of production located on the . . . unit, shall have the same effect in continuing this Lease in full force and effect as if such Operations were conducted upon the Leasehold, or as if such well capable of production was located on the Leasehold.").

As noted previously, oil and gas leases are interpreted according to the principles of contract law, and effect must be given to the "accepted and plain meaning of the language used, rather than the silent intentions of the parties." Willison, 637 A.2d at 982; see also Miller v. Poole, 45 A.3d 1143, 1146-47 (Pa. Super. 2012) ("'When the words of an agreement are clear and unambiguous, the intent of the parties is to be ascertained from the language used in the agreement, . . . which will be given its commonly accepted and plain meaning[.]'" (quoting LJL Transp.,

13

Inc. v. Pilot Air Freight Corp., 962 A.2d 639, 647 (Pa. 2009) (alterations in original)). A contract term is not rendered ambiguous by the mere disagreement of the parties as to its meaning, and when the court can divine the term's meaning "without any guide other than a knowledge of the simple facts on which, from the nature of the language in general, its meaning depends," the term is not ambiguous. Baney v. Eoute, 784 A.2d 132, 136 (Pa. Super. 2001).

Here, the lease contains no provision for disaggregating the leasehold estate for purposes of lease extension according to which parcels or portions of parcels have been unitized. The lease expressly states that any operations or drilling occurring on the production unit "*shall have the same effect* in continuing this Lease . . . as if such Operations were conducted *upon* the Leasehold." (Lease, Doc. 1-1 at ¶ 12) (emphasis added). The lease is also pellucidly clear that the term shall continue indefinitely so long as "a well capable of producing oil and/or gas is located on the Leasehold, or on lands pooled, unitized, or combined *with all or a portion of the Leasehold*." (Id. at ¶ 3(i)) (emphasis added). Plaintiffs' contention that the Lease may be continued only with respect to those leasehold parcels and portions of parcels that have been unitized into the Bauer Unit is squarely contradicted by the plain language of the lease, and therefore plaintiffs' appeals to authority outside of Pennsylvania is unpersuasive.

Plaintiffs cite Highfield Co. v. Kirk, 93 A. 815 (Pa. 1915), for the proposition that a lessee's failure to develop an entire leasehold may lead to forfeiture of undeveloped tracts. However, as SWEPI correctly notes, that opinion is inapposite

14

to the instant dispute. The court in Highfield stated that the requirement of development was an "implied condition" of oil and gas leases. Id. at 817. Implied conditions and rights yield where the terms of a contract dictate otherwise. See, e.g., Creeger Brick and Bldg. Supply Inc. v. Mid-State Bank and Trust Co., 560 A.2d 151, 154 (Pa. Super. 1989) (recognizing that "courts have . . . refused to apply a duty of good faith to alter or defeat the rights of a creditor which have been granted by law *or contract*") (emphasis added). Here, the terms of the lease regarding unitization and lease extension do not allow for the non-unitized parcels of the leasehold to be separated from the unitized parcels. Any implied condition of development that might otherwise exist is preempted by the Lease's express terms.

Whether SWEPI's unitization of the -06 and -10 tax parcels was sufficient to trigger the lease extension is not clear at this point in the litigation, and so that issue is inappropriate for resolution on a motion to dismiss. However, what is abundantly clear is that the lease does not allow the leasehold to be divided parcel by parcel. The termination or extension of the lease must be decided as to the entire leasehold estate, and so SWEPI's motion to dismiss Count II will be granted.

### C. Count III

SWEPI puts forth two arguments in support of its motion to dismiss plaintiffs' slander of title claim: first, that the claim is barred by Pennsylvania's one year statute of limitations for slander of title; and second, that even if the claim is timely, plaintiffs have failed to plead the necessary elements of slander of title.

15

Because the court agrees that the statute of limitations has run on this claim, the court need not address SWEPI's alternative argument.

The statute of limitations for a slander of title claim is one year from publication. See 42 PA. CONS. STAT. § 5523(1); see also Pro Golf Mfg. v. Tribune Review Newspaper Co., 809 A.2d 243, 246 (Pa. 2002) (holding that slander involving property is subject to the same statute of limitations as slander involving a person). A "publication" is the communication of an allegedly defamatory or slanderous statement by the defendant to a third person, see Sobel v. Wingard, 531 A.2d 520, 522 (Pa. Super. 1987), and each republication of an allegedly slanderous statement is a separate cause of action – that is, each republication triggers a new one year statute of limitations. Bloch v. Temple University, Civ. A. No. 94-2378, 1995 WL 263541, at *3 (E.D. Pa. 1995). The only allegedly defamatory publication that plaintiffs allege in their complaint is the Declaration of Pooling and Unitization, recorded September 17, 2010. The complaint was filed on December 2, 2011, well outside the one year statute of limitations.

Plaintiffs posit that defendants' conduct subsequent to the recording date had "the power to transform even a good-faith filing into an ongoing slanderous encumbrance on lessors' titles." (Doc. 12 at 13). It is unclear from plaintiffs' brief whether they mean to convey that SWEPI's allegedly slanderous statements were *republished* subsequent to recording, or rather that the alleged slander created an ongoing harm that tolled the statute of limitations, but the complaint makes no mention of any publication other than the September 17, 2010 declaration.

16

Pennsylvania law is clear that a cause for slander *must* allege a publication, see Elia v. Erie Ins. Exchange, 634 A.2d 657, 660 (Pa. Super. 1993) ("[I]n order for defamation to occur in the form of either libel or slander, the defamatory statement *must be published or communicated to a third person*.") (emphasis added), and the only publication alleged falls outside the statute of limitations. For that reason, SWEPI's motion to dismiss Count III will be granted.

### D. Count IV

Plaintiffs' final claim alleges that SWEPI breached the covenant of good faith and fair dealing by installing a placeholder well on the eve of expiration of the lease and without a good faith intent to pursue production. (Complaint, Doc. 1 at ¶¶ 61-75). It is unclear from the complaint whether plaintiffs intend to bring this claim under a tort law or contract law theory, and plaintiffs' Brief in Opposition to the motion to dismiss does not clarify the issue. (See Doc. 12 at 15 (arguing that plaintiffs' breach of good faith claim "should proceed, whether as a breach of contract . . . or as a tortious breach")). SWEPI argues that Count IV should be dismissed because Pennsylvania law does not recognize an independent cause of action for breach of the implied duties of good faith and fair dealing. Rather, SWEPI argues, such claims are merely claims for breach of the underlying contract, and because plaintiffs do not allege breach of contract in the complaint, the count fails to state a claim upon which relief can be granted. (Doc. 9 at 14-15). The court agrees with SWEPI, and will therefore grant its motion to dismiss Count IV.

Pennsylvania law recognizes a general duty of good faith and fair dealing in the performance of a contract, at least in certain circumstances. See Creeger Brich and Bldg. Supply Inc. v. Mid-State Bank and Trust Co., 560 A.2d 151, 153-54 (Pa. Super. 1989) (noting that the duty of good faith has been recognized in dealings between franchisers and franchisees, insurances companies and the insured, and in some employment contexts); see also Zaloga v. Provident Life and Accident Ins. Co. of America, 671 F. Supp. 2d 623, 629 (M.D. Pa. 2009) (noting that the Pennsylvania Supreme Court has not expressly recognized a duty of good faith and fair dealing in contracts, but that it has been recognized by lower courts and some Supreme Court justices). A claim for breach of the covenant of good faith and fair dealing sounds in contract law, because the covenant "arises from the contract itself." Id. at 630. Pennsylvania law does not recognize a separate cause of action for breach of the covenant "because such a breach is merely a breach of contract." Id. at 631.

Plaintiffs contend that Count IV should be allowed to proceed, under either a tort or contract theory, but without committing to one or the other. (See Doc. 12 at 15). Plaintiffs cite Zaloga for the proposition that a claim for breach of the covenant may proceed in tort, but that case merely recognized that a tortious claim for bad faith may arise when there exists a special relationship, such as a fiduciary duty, between the parties. 671 F. Supp. 2d at 631 n.6 ("Actions for bad faith may sound in tort, however such actions arise from the breach of a relational obligation – such as a fiduciary obligation."). Here, the complaint contains no allegations that a fiduciary duty existed between plaintiffs and SWEPI. Moreover, the court in Zaloga

18

went on to recognize that "the implied covenant of good faith and fair dealing gives rise to no independent action aside from breach of contract," Id. at 631-32, and the reason for this is that a "claim for breach of the implied covenant of good faith and fair dealing is subsumed in a breach of contract claim." LSI Title Agency, Inc. v. Evaluation Services, Inc., 951 A.2d 384, 392 (Pa. Super. 2008).

Plaintiffs' claim is that the conditions necessary for the extension of the lease did not materialize, and therefore the contract terminated at the expiration of the five year term. Plaintiffs do *not* allege that SWEPI breached the terms of the lease. Rather, the allegations contained in Count IV are largely similar to those contained in Count I – namely, that the last-minute unitization of the -06 and -10 parcels with the Bauer Unit, and the drilling of the alleged placeholder well, were speculative in nature and failed to extend the lease. Plaintiffs' claim for breach of the covenant of good faith and fair dealing fails to state a claim upon which relief can be granted because plaintiffs have not alleged breach of contract. Therefore, SWEPI's motion to dismiss Count IV will be granted.

An appropriate order will issue.

       S/ Christopher C. Conner
       CHRISTOPHER C. CONNER
       United States District Judge

Dated:       January 16, 2013

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ROBERT J. STEWART, EDNA L.** | : | **Civil Action No. 4:11-cv-2241** |
| **STEWART, as Trustee(s)** | : | |
| **of The Stewart Living Trust,** | : | **(Judge Conner)** |
| **DERRA, LTD., THOMAS BOWER** | : | |
| **and LYNN BOWER,** | : | |
|     **Plaintiffs,** | : | |
| | : | |
|     v. | : | |
| | : | |
| **SWEPI, LP**, | : | |
|     **Defendant** | : | |

## **ORDER**

AND NOW, this 16th day of January, 2013, upon consideration of the motion to dismiss (Doc. 8), filed by plaintiff SWEPI, LP, and for the reasons discussed in the accompanying memorandum, it is hereby ORDERED that:

1. SWEPI's motion is DENIED with respect to Count I of the complaint.

2. SWEPI's motion is GRANTED with respect to Counts II, III, and IV of the complaint.

                                                          S/ Christopher C. Conner
                                                          CHRISTOPHER C. CONNER
                                                          United States District Judge